**Arthur F. GUNN, Petitioner,**

v.

**Mr. KUHLMAN, Superintendent, Woodbourne Correctional Facility, Respondent.**

**No. 79 Civ. 1011.**

United States District Court, S. D. New York.

Oct. 10, 1979.

---

**340**

Arthur F. Gunn, pro se.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for respondent; Paul E. Milbauer, Asst. Atty. Gen., New York City, of counsel.

## OPINION

### EDWARD WEINFELD, District Judge.

Petitioner, now serving an indeterminate sentence of up to fifteen years imposed after his plea of guilty to attempted rape in the first degree entered in the Albany County Court, New York State, seeks his release by a federal writ of habeas corpus. He contends that the judgment of conviction is constitutionally void because (1) the trial judge refused to permit the withdrawal of his plea of guilty, and (2) he was denied effective assistance of counsel.

The crime to which the petitioner pled guilty occurred at approximately 3:00 o'clock on the morning of October 12, 1975 in a student dormitory at the State University of New York at Albany. The victim, Ms. Joanne Pichurko, swore in her complaint that she was awakened from sleep in her dormitory room by a male intruder who grabbed, threatened, and choked her, forcibly removed her undergarments, and over a period of several minutes repeatedly attempted to force her to submit to both sexual intercourse and sodomy. His efforts were unsuccessful only because the victim resisted despite her assailant's threats and his attempts to choke her. Eventually, she forced her way free and screamed, whereupon her partially clad assailant ran out of the room, down the corridor, and into the women's bathroom. The victim chased him down the hall and stood outside the bathroom screaming for assistance. Two male residents came to her aid and kept the perpetrator cornered in the bathroom until the police arrived.

A grand jury returned an indictment charging petitioner with attempted rape in the first degree[1] and with burglary in the second degree,[2] "Class C" felonies,[3] each of which carries a maximum punishment of fifteen years imprisonment.[4] Gunn was arraigned on October 20, 1975, when he was represented by an attorney on the staff of the Albany County Public Defender. A plea of not guilty was entered and the trial was set for November 19, 1975. On that day, represented by the same attorney, the petitioner offered to plead guilty to attempted rape in full satisfaction of the indictment.

Before accepting the tendered plea, petition was questioned closely by the court. He acknowledged that he understood he was pleading to a felony for which he could be sentenced to a maximum of fifteen years imprisonment; that he understood he was waiving his right to a jury trial; that the plea was the product of his own free will and voluntarily made; and that no promises as to sentence had been made by any person. The indictment was read and Gunn admitted that he was present in the victim's room when the attempted rape allegedly occurred. However, when asked by the court, "Did you try to rape that girl?," the petitioner replied, "I don't remember, sir, I was drunk at the time." When asked what he did in the girl's room at that time, he

1. See N.Y. Penal Law §§ 110.00 (attempt) and 130.35(1) (rape in the first degree) (McKinney's 1975).

2. Id. § 140.25(2).

3. Burglary in the second degree is a Class C felony. Id. § 140.25. Rape in the first degree is a Class B felony. Id. § 130.35. However, the attempt to commit a Class B felony constitutes a Class C felony. Id. § 110.05(5). Thus, attempted rape in the first degree is a Class C felony.

4. Id. § 70.00(2)(c).

again asserted that he did not remember his actions on the morning in question. Nevertheless, when questioned further by the court, petitioner stated that he did not "disagree with the allegations contained in the indictment. . . ." And when asked once more how he pled to the crime, he replied, "Guilty, your Honor." The court thereupon accepted his plea.

At the time of sentencing, one week after the entry of the guilty plea, the petitioner, his attorney and the prosecutor, were asked by the court whether they wanted to be heard with reference to sentencing; they responded negatively. As the court was about to pronounce sentence, the petitioner himself moved to withdraw his plea of guilty. He stated that: (a) he had been "scare[d] into" his guilty plea by his attorney, who had "convinced" him "that [he] would be found guilty"; (b) he had seen his lawyer only for a total of twenty minutes before making the plea; (c) he was "scared" by the minimum sentence that could be imposed; (d) he "had a change of mind" about the plea, and; (e) he felt he had a defense to the charge. Sandwiched among the list of these items, and toward the end of his statement, petitioner asserted for the first time, "For one, I'm innocent."

After making a detailed recital of its inquiry of the defendant at the time he offered to plead guilty to assure that his plea was freely, knowingly and voluntarily entered and that a factual basis existed for his admission of guilt, the court denied the motion to withdraw the guilty plea. In doing so, the court invoked its power to "exercise . . . discretion . . . in the interest of justice." Although recognizing that "there is something abhorrent about sentencing a man who protests his innocence," the court nevertheless concluded that unless there was "finality in plea

bargaining" on both sides, the criminal justice system would be reduced to "chaos." The court then imposed an indeterminate sentence of imprisonment with a maximum of fifteen years.[5]

The petitioner appealed his conviction to the Supreme Court, Appellate Division, which denied relief.[6] It rejected both of Gunn's contentions—that the trial court erroneously refused to permit the withdrawal of his plea, and that he was denied adequate assistance of counsel. In its per curiam opinion the Appellate Division did not comment upon the petitioner's third contention: that the trial court had erred when it failed to suppress certain unspecified identification evidence. The petitioner's motion for leave to appeal to the Court of Appeals was denied on January 10, 1977.[7]

I

As to his claim of inadequate and ineffective representation by counsel, particularly with respect to the entry of his guilty plea, the petitioner charges that his attorney spent no more than twenty minutes with him before the plea was entered, and that most of this time was directed to urging him to enter into a plea bargain. In order for this charge to reach the level of a constitutional denial of his right to adequate legal representation, petitioner must establish that the advice he received and upon which he acted in entering his guilty plea was not "within the range of competence demanded of attorneys in criminal cases."[8] A defendant who pleads guilty on his counsel's advice accepts "the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken as to the facts or as to what a Court's judgment may be on given facts."[9] As to the time factor, every law-

5. A fifteen-year sentence is the maximum that could be imposed for the commission of a Class C felony. See Penal Law § 70.00(2)(c). See also note 3 supra.

6. People v. Gunn, 54 A.D.2d 805, 388 N.Y.S.2d 38 (3d Dep't 1976).

7. 41 N.Y.2d 866, 393 N.Y.S.2d 1033, 362 N.E.2d 631 (1977) (Jones, J.)

8. McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). See also Tollett v. Henderson, 411 U.S. 258, 266–67, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

9. McMann v. Richardson, 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970). Cf. United States ex rel. Walker v. Henderson, 492 F.2d 1311, 1312 (2d Cir.), cert. denied, 417 U.S. 972, 94 S.Ct. 3179, 41 L.Ed.2d 1144 (1974). See

yer of trial experience knows, as do the trial courts, that time spent in consultation is not the measure of competence; that each case must be resolved on its individual facts with respect to the issue of adequate representation.[10] The charge against petitioner was simple; the facts uncomplicated; the state's witnesses, three, the victim and the two fellow students who cornered defendant in the bathroom. The defendant, of course, was a potential witness on his own behalf. However, the record does not indicate that other witnesses were available to the defense, or the nature of the testimony that he or they might have given upon a trial. Assuming petitioner correctly states the amount of time his attorney spent with him, it is not alleged in what respect additional conferences would have aided his defense or resulted in his not entering the plea of guilty.

■ Although petitioner has not set forth any evidentiary fact as to the advice he allegedly received from his attorney, the record permits a consideration of the advice that a "reasonably competent attorney" would have given the petitioner who, if convicted on both counts, faced a term of imprisonment ranging from 10 to 30 years.[11]

Had the case proceeded to trial the evidence available to the state to support a conviction of the defendant was substantial. The victim's sworn complaint, filed shortly after the incident, graphically depicted her harrowing experience. Assuming that her account was truthful, the evidence pointed to petitioner as the perpetrator. Although the victim refused to look at her assailant's face, she pursued him down the hall when he fled from her room and saw him enter the bathroom. She was aided by the two male students who responded to her screams for help. With the assailant not out of her sight from the time of the attempted rape in the bedroom to his entry into the bathroom, three witnesses were available to identify him as the individual who was removed from the bathroom and then placed under arrest. While petitioner now asserts an alibi defense, notice of which was not served upon the state prior to trial as required,[12] no facts have been set forth to indicate basis of such a defense.

■ Under these circumstances, the only issue that Gunn might have raised upon a trial, and which he referred to when he sought to withdraw his guilty plea, is that he was too drunk to have had the requisite criminal intent to commit the crime. Other than his statement at the time of sentencing, the record, however, contains nothing to indicate that Gunn had consumed any alcoholic beverages or if he had, the quantity and the effect of consumption of liquor on the issue of criminal intent. Moreover, the victim's description of her assailant's

also *United States ex rel. Maselli v. Reinike*, 383 F.2d 129, 133 n. 4 (2d Cir. 1967).

**10.** *See United States v. Wight*, 176 F.2d 376, 379 (2d Cir. 1979) ("[The] time consumed in oral discussion and legal research is not the crucial test of the effectiveness of the assistance of counsel.") *See also People v. Tomaselli*, 7 N.Y.2d 350, 197 N.Y.S.2d 697, 165 N.E.2d 551 (1960) (rejecting claim of incompetence of counsel where sixteen year old defendant entered a plea of guilty after ten minutes of consultation with counsel). Common knowledge tells us that the obvious can be expressed briefly.

**11.** The petitioner was indicted for two Class C felonies. *See* note 3 *supra*. Had he been convicted of both, the trial judge would have been authorized to impose sentences of from five to fifteen years of imprisonment for each offense.

*See* N.Y. Penal Law § 70.00(2)(c) and (3)(b). Where the offenses are burglary and rape, the trial court retains the discretion to impose consecutive sentences, even though both crimes were committed during a continuous course of conduct. *See People v. McMillan*, 61 A.D.2d 800, 401 N.Y.S.2d 868 (2d Dep't 1978). Thus, had the petitioner in this case gone to trial and been convicted of both counts, he faced a sentence of ten to thirty years imprisonment. The petitioner's prior criminal record presented the prospect of a lengthy prison term with a fixed minimum. *See, e. g., People v. McMillian, supra.*

**12.** N.Y.Crim.Proc. § 250.20. Pursuant to this a formal state demand was served upon petitioner's counsel but no notice of an alibi defense was served.

actions reflects a course of purposeful and malicious conduct that seems inconsistent with drunkenness. Finally, even if petitioner had offered proof of intoxication, the jury was not required to but could consider that evidence on the issue.[13]

In light of the direct evidence against the petitioner, the shocking character of the crime, and the infirmity of his purported "defense,"[14] counsel's advice to the petitioner was more than competent. It represented, as the trial judge noted, "an honest appraisal of the situation" facing the petitioner. The fact that counsel, upon a realistic appraisal of the situation, may have strongly impressed his view upon the petitioner is not in itself improper, in the absence of any showing that Gunn's will was overborne.[15]

Finally, despite petitioner's protestations to the contrary, he profited from his lawyer's advice; he gained from " 'the give-and-take negotiation common in plea bargaining between the prosecution and the defense.' "[16] His sentence was considerably lighter than what he might otherwise have received.[17] Despite his prior criminal record, he was given an indeterminate sentence without the minimum of which he

was "scared." On these facts, petitioner's claim that he was deprived of his constitutional right of adequate and competent counsel is without substance.

## II

The petitioner next contends that the trial court committed constitutional error in refusing to allow him to withdraw his guilty plea. A defendant has no absolute right to withdraw a guilty plea;[18] the matter rests in the court's discretion.[19] A state habeas corpus petitioner whose motion to withdraw a guilty plea has been denied and whose claim has been passed on and rejected by the state's appellate tribunals, must be denied habeas relief unless he raises "a clear issue of constitutional dimensions."[20] As Chief Judge Lumbard has observed, a plea of guilty is not " 'a mere trial balloon to test the attitude of the trial judge' ";[21] to permit it to be used as such "would afford an all too easy avenue for the invalidation of convictions . . . ."[22]

Accordingly, the burden is on the petitioner to show a substantial reason for relief. Here, Gunn has failed to make that showing. The record belies the petitioner's

---

13. See, e. g., People v. Jones, 27 N.Y.2d 222, 228, 316 N.Y.S.2d 617, 621, 265 N.E.2d 446, 449 (1970). Intoxication is not a defense to a crime requiring specific intent; rather, it is relevant only in assessing the quality of the accused's intent. See, e. g., People v. Orr, 43 A.D.2d 836, 350 N.Y.S.2d 750 (2d Dep't 1974), aff'd, 35 N.Y.2d 829, 362 N.Y.S.2d 862, 321 N.E.2d 783 (1974).

14. See note 13 supra.

15. The very prospect of facing trial and of the punishment that follows a conviction is likely to have far more coercive impact upon the defendant's choices than anything that counsel might tell him. Yet this coercive effect is clearly legitimate. See Bordenkircher v. Hayes, 434 U.S. 357, 362–63, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); Tollett v. Henderson, 411 U.S. 258, 263, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); Brady v. United States, 397 U.S. 742, 750–52, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

16. Bordenkircher v. Hayes, 434 U.S. 357, 362, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978) (quoting Parker v. North Carolina, 397 U.S. 790, 809, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970)).

17. See note 11 supra.

18. United States ex rel. Scott v. Mancusi, 429 F.2d 104, 109 (2d Cir. 1970), cert. denied, 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed.2d 651 (1971). See also United States ex rel. Rosa v. Follette, 395 F.2d 721 (2d Cir.), cert. denied, 393 U.S. 892, 89 S.Ct. 216, 21 L.Ed.2d 172 (1968); United States ex rel. Best v. Fay, 239 F.Supp. 632 (S.D.N.Y.1965), aff'd, 365 F.2d 832 (2d Cir. 1966), cert. denied, 386 U.S. 998, 87 S.Ct. 1319, 18 L.Ed.2d 347 (1967); United States ex rel. Schmidt v. LaVallee, 445 F.Supp. 1156 (S.D.N.Y.1977); United States ex rel. Gadsden v. Vincent, 411 F.Supp. 336 (S.D.N.Y.1975).

19. See note 18 supra, and cases cited therein.

20. United States ex rel. Scott v. Mancusi, 429 F.2d 104, 110 (2d Cir. 1970), cert. denied, 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed.2d 651 (1971).

21. Id. (quoting United States v. Weese, 145 F.2d 135, 136 (2d Cir. 1944)).

22. Id. at 110.

contention that the trial court accepted an involuntary plea. In fact, the trial court made the necessary inquiries into the factual basis of the plea before accepting it. Despite his claim that he did not remember some of his actions, the petitioner, at the time of the inquiry as to his plea, stated he was aware of the crime charged, admitted that he committed it, and knowingly waived his right to a trial. That is as much as,[23] and indeed more than,[24] the constitution requires.

 The petitioner advances two arguments that the trial judge explicitly rejected. First, he claims that his protestations of innocence, made at the time he sought to withdraw his plea, re-opened the issue of his guilt. Because a trial court may accept a guilty plea even when it is coupled with a claim of innocence,[25] a fortiori a court is not required to permit withdrawal of that plea merely because a defendant belatedly asserts his innocence.[26] Moreover, the petitioner baldly asserts that the state would not have been prejudiced had his motion been granted. Apart from the fact that the state need not show prejudice to defeat such a motion,[27] the trial court in this instance found that the state was prejudiced by the defendant's vacillation. Here the defendant waited until the very moment of trial, when a jury was ready to be selected, before entering his guilty plea. Thereafter, he waited until the very moment of sentence before moving to withdraw his plea. It cannot seriously be doubted that valuable judicial resources would be squandered by the adoption of a rule permitting criminal defendants to en-

ter and withdraw guilty pleas at their discretion, rather than that of the courts. This is particularly true in that the overwhelming majority of criminal convictions are obtained by pleas of guilty.[28]

 In short, the trial court neither abused its discretion nor committed constitutional error in denying the petitioner's motion to withdraw his plea of guilty.

### III

 The final issue requires only brief comment. The petitioner claims that the trial court improperly denied his request for suppression of certain identification evidence wrongfully obtained by the state. The state in advance of trial indicated that there had been no pretrial identification. Petitioner does not now state what evidence he sought to suppress.[29] Nor does the record indicate clearly that he exhausted his state court remedies with respect to this issue. But even assuming that the state had impermissibly obtained identification evidence, that the trial court improperly failed to suppress it, and that the issue is properly before us for habeas corpus review, nevertheless this claim would fail. The Supreme Court has squarely settled the issue:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitu-

---

**23.** *See, e. g., Brady v. United States*, 397 U.S. 742, 743 n. 2, 747–48, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 20 L.Ed.2d 274 (1969).

**24.** Although a criminal defendant entering a guilty plea must expressly waive his right to a trial, he need not make an express admission of guilt in order for his plea to be valid. *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Indeed, the trial court may accept his plea even as he protests his innocence. *Id.* at 38, 91 S.Ct. 160.

**25.** *See* note 24 *supra*.

**26.** *Cf. United States v. Fernandez*, 428 F.2d 578, 579 (2d Cir. 1970).

**27.** *See United States ex rel. Scott v. Mancusi*, 429 F.2d 104, 109 (2d Cir. 1970), *cert. denied*, 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed.2d 651 (1971).

**28.** *See Brady v. United States*, 397 U.S. 742, 752 n. 10, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

**29.** The trial court found that there was no identification evidence to suppress.

tional rights that occurred prior to the entry of the guilty plea.[30]

For all of the foregoing reasons, the petition for a writ of habeas corpus is denied.

So ordered.

---

**30.** *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). The only claim that the petitioner may raise after his guilty plea has been accepted is the one that we have already rejected here: that his plea was the product of ignorance, coercion, or inadequate counsel. *See Tollett, supra* at 267, 93 S.Ct. 1602.