OPINION OF THE COURT
John P. Collins, J.
Can a lawyer be forced to trial when the defendant makes it *739 unreasonably difficult to carry out his representation effectively?
The defendant is charged in a 72-count indictment with the crimes of rape, sodomy, incest, assault, endangering the welfare of a child and other crimes. The victims of these crimes are said to be nine of the defendant’s children. The crimes cover a three-year period. The People claim that for years the children never saw the light of day, never attended school and never received any medical attention. The children, then ranging in age from 15 years to infancy, lived in a three-room apartment. All but three of the children were born at home and no official record of their birth exists. The defendant told the police that three other children were either stillborn or died as infants and that he buried them in a park near his apartment house.
The defendant was examined pursuant to CPL article 730 when the case was pending in the Bronx Criminal Court. The psychiatrists found the defendant to be competent and the findings were confirmed.
After arraignment on the indictment in Supreme Court, the defendant filed an insanity defense notice. The defendant’s attorney then filed a letter from a psychiatrist claiming that the defendant was not competent to stand trial. The court conferred with the psychiatrists at the Bronx Clinic and referred the defendant to the clinic for a further CPL article 730 examination. This time, the clinic doctors found that the defendant was not competent. The parties moved to confirm the psychiatric findings. The motion was granted and the defendant was sent to the Mid-Hudson Psychiatric Facility. Within days of his arrival there, the defendant was found paranoid but competent and returned to the court for further proceedings.
Neither party moved to controvert the new findings. The court, sua sponte, pursuant to CPL 730.60 (2); 730.30 (2) ordered a hearing and called the doctor from the Mid-Hudson facility as a court witness. Neither party cross-examined the witness. The defense, however, called as its witness, a doctor who initially had forwarded a letter to the court claiming the defendant was not competent.
At the conclusion of the hearing — on August 7, 1990, the court found that the defendant was fit to stand trial. This finding was based on the hearing testimony, the court’s observation of the defendant and its colloquy with the defendant *740 over a period of time. A firm trial date of September 4, 1990 was set.
By this time, it was clear that the defendant was resisting counsel’s suggestion of an insanity defense. McMillan desired a trial but he refused to submit to an examination scheduled by a psychiatrist selected by the defense. This was revealed at a number of conferences between the attorneys and the court.
On September 4, 1990, the case was called for hearings and trial. During these hearings, the District Attorney disclosed that the defendant refused to be examined by the People’s psychiatrist relative to the insanity defense. It thus became crystal clear that there was to be no medical testimony — at trial — on the issue of insanity. Moreover, the defendant himself clearly stated, on the record — on more than one occasion —that he did not want an insanity defense raised at trial. McMillan’s lawyer stressed that this was counsel’s only viable defense. At counsel’s urging, the court addressed the defendant. It suggested that the defendant carefully listen to the advice of the experienced lawyer, but the court recognized that the defendant could reject the use of such a defense.
McMillan’s lawyer repeatedly claimed that his client was not competent because he rejected what the lawyer perceived to be a rational and the only viable defense.
It is understandable that in our present day milieu, citizens —including lawyers and Judges — become upset when they observe a bizarre scenario as represented in the instant case. The easy answer is that the defendant may have committed the acts but wasn’t mentally responsible for them, whether that be the case or not. It is just as easily answered that the person must not be competent and that he should be shipped off to some mental institution and that will be the end of the case. The assumption is that an incompetency commitment will be less onerous than a criminal trial. (See, Note, Incompetency to Stand Trial, 81 Harv L Rev 454.)
Our laws regarding competency are not focused in that fashion at all. They operate with the view that one who is not competent is to be held in a mental institution only until such time as he is mentally well enough to be tried, and it is the function of such institution to make him well. The ultimate premise being that every man is to be tried for his criminal conduct.
The purpose of a pretrial competency hearing is to determine whether the accused is mentally competent to stand *741 trial, and the inquiry focuses narrowly on the defendant’s present mental capacity to understand the proceedings and assist in his own defense (see, CPL 730.10 [1]). The test is whether he has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings pending against him. (See, People v Francabandera, 33 NY2d 429.) The standards for competency are not overly rigorous. (See, Dusky v United States, 362 US 402.) The reason for this is that a defendant has a basic right to a speedy trial, to get his day in court, to get an adjudication. If this were not so, our noble desire to protect the mentally ill could easily be turned into long periods of confinement without trial. With the evil connivance of courts and doctors and lawyers, that situation has prevailed in other countries. Our system of due process intends otherwise. Neither is it the function of psychiatrists and others to treat the mentally ill as though they have been acquitted by reason of insanity.
On the eve of trial, on two occasions, counsel asked to be relieved, once before jury selection and once during jury selection. Counsel requested a stay of the trial. This was denied by the court. During jury selection, counsel sought a similar stay pursuant to a CPLR article 78 proceeding at the Appellate Division. This was likewise denied.
This leads to the question of whether a defendant has a right to reject counsel’s advice regarding an insanity defense. Can the defendant prevail on this issue or does counsel have the right to conduct such a defense despite his client’s objection? The court finds that he — counsel—cannot prevail.
A defendant who is competent has every right to reject the use of an insanity defense. (See, American Bar Association, Criminal Justice Mental Health Standards 7-6.3 [1989].) There are a variety of possible reasons as to why any defendant might reject such a defense. A distaste for the label and fear of being custodially housed in a particular environment are only two of the myriad possible reasons. Often, the reason advanced is only a mask for the true reason. This is probably particularly so in the situation where the defendant is paranoid. Nevertheless, being paranoid doesn’t prevent one from being competent. This, psychiatrists have come to recognize, and indeed the hearing testimony has reflected this.
The issue, as denominated above by the court — at first *742 glance — poses a difficult problem. The separate interests of the defendant, his lawyer, the People and the court are involved.
The Disciplinary Rules of the Code of Professional Responsibility, effective September 1, 1990, provide that an attorney may seek to withdraw from representing a client when a defendant, by his conduct, renders it unreasonably difficult for the lawyer to carry out his employment effectively (see, DR 2-110 [C] [1] [d]). There is no question in the instant case but that McMillan, by rejecting what his lawyer regards as the only viable defense, has made it unreasonably difficult for counsel to carry out his representation. It matters not that counsel has been assigned — rather than retained — pursuant to article 18-B of the County Law, McMillan being an indigent defendant.
The Disciplinary Rules, however, also require that counsel can only withdraw in these circumstances with the permission of the court (see, DR 2-110 [A]). The court refuses to grant this permission for the reason that the case has been pending against this incarcerated defendant for over one year. Counsel’s request for relief was first made on the eve of trial, well after a firm trial date was set, and his second request was made during jury selection. Counsel had adequate opportunity over the many months that the case was pending, to resolve the issue and make an application to the court. This he failed to do.
The Disciplinary Rules further provide that counsel can seek permission to withdraw only where withdrawal can be accomplished without material adverse effect on the interests of the client. To permit a withdrawal of counsel now, would require the defendant to forego a trial for a number of months. Any new attorney would need such a period to familiarize himself or herself with the case and prepare for trial.
Additionally, any new attorney would be faced with precisely the same problem. While an insanity defense may be the only viable defense, the defendant, pure and simply, wants no part of such advocacy.
When a competent defendant — by his acts — has prevented the introduction of medical testimony on insanity and has specifically rejected the use of such a defense, that ends the question. To permit counsel — in front of the jury — to argue an insanity defense while his client verbally or otherwise opposes it would interfere with the defendant’s due process rights and, *743 to a lesser degree, the good order and the court’s conduct of the trial. We all must be reminded from time to time, Judge, defense counsel, defendant and prosecutor, that we each have carefully delineated duties and rights and should not overreach. In the end, the issue will be — regardless of the result— did the defendant receive a fair trial? Was he accorded due process?