Ronald L. MEAD, Petitioner,

v.

Hans G. WALKER, Superintendent, Auburn Correctional Facility and Robert Abrams, Attorney General of the State of New York, Respondents.

No. 92 Civ. 7214 (VLB).

United States District Court,
S.D. New York.

Dec. 13, 1993.

Ronald L. Mead, pro se.

Stephen F. Lungen, Dist. Atty., Monticello, NY, for respondents.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

Ronald L. Mead, proceeding *pro se,* has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court conviction for murder in the sec- ond degree (felony murder) on September 19, 1985. His conviction was upheld on appellate review in *People v. Mead,* 124 A.D.2d 1076, 508 N.Y.S.2d 359 (3d Dep't 1986), *leave to appeal to Court of Appeals denied,* 69 N.Y.2d 748, 512 N.Y.S.2d 1052, 505 N.E.2d 250 (1987). The Sullivan County Court, Judge Williams, sentenced him to an indeterminate term of imprisonment of eighteen (18) years to life pursuant to a plea agreement.

The Sullivan County Court, Judge Hanofee, denied Mead's motion to vacate the conviction pursuant to New York Crim.Proc.Law § 440.10 (the "state motion to vacate"). *People v. Mead,* Index No. 2216/84 (N.Y.Co.Ct. July 10, 1985). The Appellate Division, Third Department, Justice Mahoney, rejected an application for leave to appeal that order on September 21, 1989.

### II

The federal *habeas corpus* statute concerning writs sought by state prisoners provides in part:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

28 U.S.C. § 2254(b).

■ Under the criteria set forth in *Washington v. James,* 996 F.2d 1442, 1451 (2d Cir.1993), it is appropriate to reach the merits here, since I find the petition to lack merit, and federalism would be better served by avoiding the need for repetitive state and federal litigation. That consideration applies in this instance and thus I rule on both branches of the case.

### III

On the day before his trial, Mead pled guilty to the felony murder count of an indictment which charged him and co-defendant, James Cole, with three counts of mur-

der in the second degree and one count of robbery in the first degree. At the plea proceeding Mead admitted that he and Cole had robbed and killed the victim. Specifically, Mead described his participation in taking the victim's car at knife point and then striking and killing her with her own vehicle.[1]

Mead asserts as the single basis for his *habeas* application: "Conviction obtained by plea of guilty which was induced and not made knowingly, voluntarily or intelligently" (petition at 5). The potential breadth of this ground requires the court to distill the actual claims from the affidavit accompanying the petition. See *Jackson v. Senkowski*, 814 F.Supp. 9, 10 (S.D.N.Y.1993).

Mead contends that the state trial court was aware from medical records available at the time of the plea that he was suffering from post traumatic stress disorder exacerbated by alcohol and drug intoxication at the time of the offense. Mead asserts that despite this knowledge the state trial court failed to conduct a hearing to determine his fitness to stand trial pursuant to N.Y.Crim. Proc.Law § 730.10. He claims that his attorney, also possessed of the same knowledge, advised him that if he failed to accept the plea bargain, the court would impose a minimum indeterminate sentence of 33⅓ years.

When Mead moved to withdraw the plea prior to sentencing, the state trial court again did not conduct a hearing on the issue of the voluntariness of the plea.

## IV

■ In general, before a federal court may grant a writ of habeas corpus, a petitioner must first exhaust all available remedies in the state court system. *See* 28 U.S.C. § 2254(b), (c); *Picard v. Connor*, 404 U.S.

270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 190 (2d Cir.1982) (en banc), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). Accordingly, a petitioner who desires to overturn a state conviction must first give the state courts a fair opportunity to pass upon his federal claims. *Gonzalez v. Sullivan*, 934 F.2d 419, 422 (2d Cir.1991); *Solomon v. Senkowski*, 778 F.Supp. 197, 198 (S.D.N.Y.1991).

■ In order to have fairly presented his claims to the state courts, a petitioner must have informed the state courts of both the factual and legal basis of the claims. *Daye*, 696 F.2d at 191. Specifically, a petitioner must have set forth in state court all of the essential factual allegations asserted in the federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim. *Picard*, 404 U.S. at 276, 92 S.Ct. at 512.

Exhaustion of all claims in state courts furthers the purpose underlying the exhaustion doctrine, codified in 28 U.S.C. § 2254(b) and (c), of protecting the state role in enforcement of federal law. *Rose v. Lundy*, 455 U.S. 509, 513–514, 102 S.Ct. 1198, 1200–01, 71 L.Ed.2d 379 (1982); *Plunkett v. Johnson*, 828 F.2d 954, 955 (2d Cir.1987); *Strauch v. Keane*, 801 F.Supp. 1271, 1272 (S.D.N.Y. 1992), *aff'd* 999 F.2d 536 (2d Cir.1993).

At the time of Mead's sentencing on September 19, 1985, he moved to set aside the plea claiming that at the time of the offense he lacked the intent to commit murder. Although counsel argued that Mead suffered from a mental disorder, which assertedly favored a more lenient sentence, he did not raise this point as a basis for vacating the

---

1. James Cole also pled guilty to murder in the second degree. In disposing of the appeal from his conviction, the Appellate Division related the following underlying facts:

On November 28, 1984, Ronald Mead, Judy Raiten, and defendant were among those present at a friend's house having a few drinks. During the course of the evening, defendant and Mead discussed the idea of killing Raiten and, in furtherance of the plan, took a kitchen knife, which defendant placed in his pocket, and convinced Raiten to take them for a ride in her car. In a remote area of Sullivan County,

defendant and Mead got Raiten to stop her car, forced her out at knife point and drove away with her car, with Mead at the wheel. After proceeding a short distance, Mead made a U-turn and drove back toward the scene of the robbery. When Raiten stepped into the road to try and flag them down, Mead purposely drove over her, killing her.

*People v. Cole*, 152 A.D.2d 851, 544 N.Y.S.2d 228 (3d Dep't), *leave to appeal to Court of Appeals denied*, 74 N.Y.2d 895, 548 N.Y.S.2d 428, 547 N.E.2d 955 (1989).

plea. Judge Williams determined that the plea was knowing and voluntary, denied the application and imposed the negotiated sentence.

Mead's brief on direct appeal raised the following issues: (1) "... that the appellant's plea allocution did not constitute an admission of all the necessary elements of the crime to which he was pleading guilty...." and (2) "The sentence of eighteen years to life imprisonment imposed by the court below upon appellant's conviction of the crime of murder in the second degree was excessive". Pet. Appellate Div. Brief at 5, 10. In the argument supporting the second issue Mead's appellate counsel alluded to Post Vietnam Stress Syndrome; however, the reference was not mentioned as, and cannot be understood as, an argument or claim that this problem furnished a basis for invalidating or setting aside the plea. Appellate counsel merely observed that Mead's mental problems "contributed to and exacerbated his alcoholism, and his alcoholism was the cause of his involvement in the incident which resulted in Ms. Raiten's death." Id. at 11. Similar to trial counsel at the sentencing, appellate counsel asserted that based on these facts the sentence was excessive.

Finally, in his state motion to vacate Mead did not mention a specific mental disorder but merely stated that he had an "overwhelming degree of alcohol in his system" at the time the offense was committed. Motion to Vacate, at 17.[2]

Despite numerous proceedings and opportunities, the record reflects that Mead has never requested a hearing on his competency to stand trial pursuant to N.Y.Crim.Proc.Law § 730.10. Accordingly, Mead's claims are unexhausted. See *Picard*, 404 U.S. at 276, 92 S.Ct. at 512.

## V

■N.Y.Crim.Proc.Law § 730.10 establishes the standard by which New York courts determine whether a defendant is mentally competent to stand trial. Incompetency does not necessarily bar a litigant from obtaining adjudications on numerous matters, such as subject matter jurisdiction, probable cause to be held, and other questions of law or discretion. See *United States v. Galu*, 812 F.Supp. 19 (S.D.N.Y.1992), aff'd 999 F.2d 537 (2d Cir.1993) (Table). But a plea of guilty is not one of those adjudications; it requires knowing, intelligent and voluntary action on the part of the defendant.

■ The state test for incompetency appears to parallel the federal one, i.e., whether the defendant has sufficient present ability to consult with his or her attorney with a reasonable degree of rational understanding and whether the defendant has a rational as well as a factual understanding of the pending proceedings. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); see also *Penry v. Lynaugh*, 492 U.S. 302, 333, 109 S.Ct. 2934, 2954, 106 L.Ed.2d 256 (1989); *People v. Francabandera*, 33 N.Y.2d 429, 354 N.Y.S.2d 609, 310 N.E.2d 292 (1974); *People v. McMillan*, 148 Misc.2d 738, 741, 561 N.Y.S.2d 512, 514 (N.Y.Sup.Ct.1990).

■ The psychologist and the psychiatrist hired by Mead's defense counsel found that his impairments did not preclude understanding the charges against him or assisting counsel in his defense, and as a result, that Mead was fit to stand trial. Their reports furnished no basis for the state trial court to hold a hearing on Mead's fitness to stand trial or plead guilty. The record of the plea hearing also indicates that Mead was able to understand the proceedings and did so. He articulated familiarity with the role of the judge, prosecutor and defense counsel and admitted facts sufficient to substantiate the offense of felony murder.

---

**2.** Mead also asserted in his state motion to vacate that his counsel had failed to inform him, before advising him to accept a plea of guilty, that a statutory defense of emergency conduct was available on the grounds that "he took Ms. Raiten's car, in order to save her life" and that such failure amounted to ineffective assistance of counsel. Even if the petition now before me were construed as raising an ineffectiveness of counsel claim based on the state motion to vacate, Mead has failed to demonstrate that counsel was ineffective or that but for counsel's advice, he would have insisted on going to trial. See *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

Under these circumstances, Mead's claim that he did not make his plea knowingly, voluntarily and intelligently is without merit. See *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970); *Innes v. Dalsheim,* 864 F.2d 974, 977 (2d Cir.1988), *cert. denied,* 493 U.S. 809, 110 S.Ct. 50, 107 L.Ed.2d 19 (1989).

## VI

Mead also contends that he was coerced to plead guilty because his attorney advised him that the state trial court would impose a minimum indeterminate sentence of 33⅓ years.[3]

■ The extensive reliance on plea bargaining to move court calendars has been subject to criticism. See Schulhofer, "Is Plea Bargaining Inevitable?" 97 Harv.L.Rev. 1037 (1984). It has never been held unconstitutional. Acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978).

■ The record indicates that by pleading guilty Mead avoided a longer sentence where the likelihood of conviction was high. As shown by the colloquy at the time the plea was taken between the prosecuting attorney and Mead's defense counsel regarding the content of the plea agreement, the plea negotiation included discussion of the strength of the People's case and the likelihood of conviction after trial.

Mead's own statement, which was ruled voluntary and admissible, was given to the police on the morning after the homicide. Mead admitted participating with Cole in the robbery and homicide of Judith Raiten:

We went to the Owl Garage and got another six pack of Miller. We then drove up the Debruce Road, Jimmy kept telling Judy that he was going to kill her. I was

driving when we left the Owl Garage. Judy sat in the passenger seat and Jimmy was behind her. We turned up Grooville Road, Jimmy was calling her a fat bitch and that we were going to kill her. Jimmy said stop the car, and I will make her get out. He had a knife with a little black handle, in his left hand, around the bucket seat against her stomach. He pushed the door open, squeezed past her and pulled her out. I don't know where the knife was. She was crying (don't kill me). Jimmy got back in the passengers side and we went up the road. I turned around and we drove back down the road. Jimmy kept telling me to hit her. I was going about 35 miles per hour, and decided to hit her.

Aff. of Respondents, Ex. 8. Accordingly, any claim that the fear of an unjustified longer prison sentence induced him to plead guilty is without merit.

## VII

■ Finally, Mead claims that the trial court failed to conduct a hearing on the voluntariness of his plea when he moved to withdraw the plea prior to sentencing. N.Y.Crim.Proc.Law § 220.60(3) grants a trial court discretion to permit withdrawal of a guilty plea. The record discloses that nothing changed between the plea allocution and the sentencing. See *Senna v. Patrissi,* 5 F.3d 18 (2d Cir.1993). Judge Williams had conducted a full and searching inquiry of Mead in compliance with New York law and the due process clause of the Fourteenth Amendment, see *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and Mead's responses demonstrated that the plea was voluntary and willing.

Just prior to sentencing, the state trial court entertained and rejected Mead's reasons for withdrawing the plea:

... in this Court's opinion there is no legal basis for the Court to consider the application. The defendant has pled guilty to the felony murder as recited by [the District Attorney] in the appearance before this Court on July 26th. This Court's recollec-

3. See footnote 2 above.

tion of the events on July 26th are as follows:

\* \* \* \* \* \*

I had an extensive discussion [in chambers] with both [the District Attorney and defendant's counsel]. Thereafter, Ronald L. Mead appeared in open Court and all proceedings were on the record.... I trust that the plea minutes will confirm that the allocution in this case consumed more than forty-five minutes. I carefully made what I thought to be an inquiry. I believe that the plea minutes will also reflect that on more than one occasion I interrupted ... to inquire of the defendant whether there was any necessity for him to consult with his attorney. I do believe that that occurred on more than one occasion. This Court is satisfied that there was the entry of the plea to felony murder in full satisfaction of all counts of the indictment. That the plea was entered by the defendant Ronald L. Mead without any misunderstanding with a full awareness that the district attorney would make a recommendation on the date of the imposition of sentence.

Tr. of State Court Hearing, Sept. 19, 1985, Aff. of Respondent, Ex. 7 at 9–10. Under these circumstances, Mead was not entitled to withdraw his plea. See *United States ex rel. Hogan v. Bara,* 578 F.Supp. 1075, 1080 (E.D.N.Y.1984); *Fluitt v. Superintendent, etc.,* 480 F.Supp. 81, 85 (S.D.N.Y.1979).

### VIII

The petition is denied. The clerk is directed to close this case.

I decline to issue a certificate of probable cause pursuant to Fed.R.App.Proc. 22; any appeal from this decision would not be taken in good faith as required by 28 U.S.C. § 1915(a).

Because I find that Mead's claims are without substance and that the interests of justice do not require appointment of counsel pursuant to 18 U.S.C. § 3006A(a)(2)(B), Mead's request for *pro bono* counsel under 18 U.S.C. § 3006A(g) is denied. See *Coleman v. Thompson,* 501 U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Heath v. Unit-*

*ed States Parole Comm'n,* 788 F.2d 85, 88 (2d Cir.), *cert. denied,* 479 U.S. 953, 107 S.Ct. 443, 93 L.Ed.2d 391 (1986).

**SO ORDERED.**