Darryl MEACHEM, Petitioner,

v.

John P. KEANE, Superintendent, Sing Sing Correctional Facility, Respondent.

No. 93 Civ. 3572 (SHS)(THK).

United States District Court, S.D. New York.

Sept. 12, 1995.

Darryl Meachem, Ossining, NY, pro se.

Carol A. Remer–Smith, Assistant District Attorney, New York City, for respondent.

## ORDER

STEIN, District Judge.

The Report and Recommendation of Magistrate Judge Theodore H. Katz dated July 20, 1995, is hereby adopted by this Court. Accordingly, the petition for a writ of habeas corpus is denied and the action is dismissed.

SO ORDERED.

## REPORT AND RECOMMENDATION

KATZ, United States Magistrate Judge.

**TO THE HON. SIDNEY H. STEIN, UNITED STATES DISTRICT JUDGE:**

This habeas corpus action was referred to me, pursuant to an Order of Reference, for a report and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 4 of the Southern District of New York Rules for Proceedings Before Magistrate Judges. For the reasons that follow, I recommend that the petition for a writ of habeas corpus be denied and the action be dismissed.

### BACKGROUND

Petitioner Darryl Meachem was charged in the Supreme Court of New York County with four counts of murder in the second degree (intentional, depraved indifference, and felony murder in the course of a robbery and a burglary, in violation of New York Penal Law § 125.25), one count of robbery in the first degree (New York Penal Law § 160.15), and one count of burglary in the first degree (New York Penal Law § 140.30). *See* Indictment, submitted as Exhibit A to Respondent's Appendix in Support of Answer Opposing Petition for a Writ of Habeas Corpus ("Resp.App.").

The charges resulted from the murder of Meachem's sister, Debra Ann Meachem, from numerous stab wounds to her neck, on May 1, 1987. (Brief for Defendant–Appellant to the Appellate Division, First Department, dated March 1992 ["Pet.App. Brief"], submitted as Resp.App. Ex. D, at 2; Transcript of Plea Proceeding ["PT."], dated December 1, 1987, submitted as Resp.App. Ex. J, at 7–8.) In a videotaped statement made several days after the murder, Meachem admitted that he had stabbed his sister while high on crack-cocaine after she refused his request for money to buy additional drugs; he then stole several items from her apartment, which he used to obtain crack-cocaine. *See* Transcript of Videotaped Statement, dated May 5, 1987, submitted as Resp.App. Ex. I.

On May 18, 1987, before he was indicted, Meachem was given a competency examina-

tion, pursuant to New York Criminal Procedure Law § 730. The examining psychiatrists determined that Meachem was not fit to proceed, based upon a finding that he was acutely addicted to cocaine and psychotic as a result of the substance abuse, and that he lacked the capacity to understand the proceedings against him or to assist in his own defense. (Psychiatric Examination Reports by Howard Owens, M.D., dated May 22, 1987, and Myles S. Schneider, M.D., dated May 18, 1987, submitted as Resp.App. Ex. B.) In July, although his mental condition had improved, Meachem was still depressed, and "too preoccupied" by the homicide, the incarceration, and the indictment, to cooperate in his own defense. (Psychiatric Examination Reports by Howard Owens, M.D., dated July 24, 1987, and V.C. deMille, M.D., dated July 24, 1987 submitted as Resp.App. Ex. B.) However, after receiving psychiatric treatment at Kirby Forensic Psychiatric Center, Meachem was found fit to proceed. (Report of Rhoda Rostky, C.S.W., and D.S. Bharne, M.D., dated February 25, 1988; Report of A. Hakki, M.D., dated March 4, 1988; Examination Report of Valerie C. deMille, M.D., filed May 26, 1988; Examination Report of Arthur Milone, M.D., dated May 23, 1988, all submitted as Resp.App. Ex. B.) On June 6, 1988, the trial court granted a motion by Meachem's trial counsel to confirm the evaluation that Meachem was fit to proceed. (Brief for Respondent, submitted to Appellate Division, First Department, dated August 1992 ["Resp.App. Brief"], at 3, citing Minutes of June 6, 1988 at 2; Pet.App. Brief at 5.)

On December 1, 1988, after the State presented evidence at a suppression hearing, Meachem agreed to enter a plea of guilty to charges of manslaughter in the second degree (N.Y. Penal Law § 125.15(1)) and robbery in the first degree (N.Y. Penal Law § 160.15(3)).[1] *See* PT. at 5–6, 8–9. Judge Berman accepted the guilty plea after extensive questioning to assure that Meachem was

entering his plea knowingly, intelligently, and voluntarily. (*Id.* at 3–15.)

Approximately one month later, when Meachem appeared in court for sentencing, his counsel moved to withdraw the guilty plea. *See* Transcript of Motion to Withdraw Plea ("WT."), dated January 3, 1989, submitted as Def.App. Ex. J. After questioning Meachem as to the basis for his motion, the court granted an adjournment to allow Meachem to file *pro se* papers in support of the motion, and to examine the plea minutes. (*Id.* at 13.) On January 20, 1989, the trial judge held an informal hearing on the motion and denied Meachem's request; he sentenced Meachem to two concurrent indeterminate terms of twelve and one-half to twenty-five years for robbery in the first degree, and seven and one-half to fifteen years for manslaughter in the second degree. *See* Transcript of Sentencing, dated January 20, 1989 ("ST."), submitted as Def.App. Ex. J, at 23.

Meachem appealed the conviction to the New York State Supreme Court, Appellate Division, First Department, claiming that: 1) the trial court erred in denying his motion to withdraw the guilty plea, because it was coerced and not knowing and intelligent; and 2) the sentence for robbery in the first degree, twelve and one-half to twenty-five years, was unduly harsh, and should be modified in the interest of justice. *See* Pet.App. Brief at 13–22. Appellate counsel requested that the conviction be reversed, the plea be vacated, and that the action be remanded for further proceedings; in the alternative, he asked that the case be remanded and new counsel appointed to allow for a more detailed inquiry into the merits of the motion or for reconsideration of the motion. (*Id.* at 18–19.)

In a unanimous decision dated October 20, 1992, the Appellate Division affirmed the trial court's Judgment. *See People v. Meachem,* 186 A.D.2d 448, 589 N.Y.S.2d 771 (1st Dept.1992). The court stated, in relevant part:

---

1. New York Penal Law, § 125.15(1) provides that a person is guilty of manslaughter in the second degree when "[h]e recklessly causes the death of another person." New York Penal Law § 160.15(3) provides that "[a] person is guilty of

robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he ... [u]ses or threatens the immediate use of a dangerous instrument...."

The [trial] court properly denied defendant's motion to withdraw his plea of guilty. The record of the plea demonstrates that the plea was knowingly and voluntarily entered after defendant, with the assistance of counsel, had been advised of the strength of the People's case and [had] time to consider the reduced sentences offered under the terms of the plea. We also find that the trial court did not abuse its discretion when it imposed the negotiated sentences.

*Id.* Petitioner applied for leave to appeal to the New York Court of Appeals on the issue of the voluntariness of his guilty plea and the adequacy of the inquiry into his motion to withdraw the plea. *See* Letter in Support of Application for Leave to Appeal ["Leave Letter"], submitted as Resp.App. Ex. H. On December 8, 1992, the Court of Appeals denied the application. *People v. Meachem,* 81 N.Y.2d 764, 594 N.Y.S.2d 727, 610 N.E.2d 400 (1992).

In the instant *pro se* petition for a writ of habeas corpus, Meachem asserts that: (1) the trial court erred in denying his motion to withdraw his plea of guilty based upon claims of coercion and confusion; and (2) his sentence is unduly harsh and should be modified. *See* Habeas Petition ["Pet."], dated March 22, 1993, at 5. The State does not contest that Petitioner's first claim is exhausted, but argues that the trial court properly refused Petitioner's motion to withdraw his guilty plea, since it was entered into voluntarily and knowingly. *See* Answering Affirmation of Carol A. Remer–Smith ("Remer–Smith Aff."), dated October 25, 1993, ¶ 8; Memorandum of Law in Support of Answer Opposing Petition for a Writ of Habeas Corpus, dated October 1993 ("Resp.Memo"), at 22–43. In addition, the State argues that Petitioner's sentencing claim is not exhausted, it does not present a federal issue cognizable on habeas review, and, even assuming that it did, it is without merit. (Remer–Smith Aff. ¶ 9; Resp.Memo at 43–48.)

### The Suppression Hearing and Plea Allocution

Petitioner's plea allocution followed the State's presentation of evidence at a two-day suppression hearing that was commenced on November 30, 1988. *See* Hearing Transcript ("HT."), dated November 30, 1988, submitted as Resp.App. Ex. J. At the hearing, police officers Georgio, Suarez, and Cruz presented testimony regarding the evidence against Meachem and the circumstances leading up to his confession. In particular, they testified about their investigation of the crime scene, including the fact that the victim's apartment was in disarray, and that part of the victim's stereo and her television set were missing. (*Id.* at 17–18, 24.) The officers also testified about several witnesses they discovered during the course of their investigation, one of whom saw Meachem with blood on his jacket (*id.* at 19), and several of whom saw Meachem with a television set and what appeared to be a stereo shortly after the time of the murder (*id.* at 23–28). The officers further testified that, through interviews with various individuals, they learned that, soon after the incident, Meachem sold or exchanged a television set, a ring, and an item that looked like a stereo, to obtain crack-cocaine. (*Id.* at 26–28, 89–91, 117–18.)

According to the officers' testimony, on May 4, Meachem's mother informed the police that Meachem was sitting in an automobile in the victim's neighborhood. (*Id.* at 30.) The officers approached Meachem, requested his "assistance" in the investigation, and Meachem voluntarily agreed to go to the police station to "help in any way I can". (*Id.* at 30–31, 74.) He appeared alert, coherent, and in good condition at all times. (*Id.* at 32, 75, 81, 84, 138.) At the police station, after receiving Miranda warnings, Meachem eventually made an oral confession, which he later reduced to a written statement. (*Id.* at 35–40, 135, 141–45.) The confession was then videotaped. (*Id.* at 50, 85, 155–57.)

On December 1, 1988, the second day of the suppression hearing, the State presented Meachem's videotaped confession. (*Id.* at 177; PT. at 3.) In the confession, Meachem stated that he had gone to his sister's apartment seeking money for crack-cocaine when he was high on drugs, and that he argued with her about his cocaine habit, which she wanted him to end. (Resp.App. Ex. I at 5–6, 9–11.) During the argument, he picked up a

knife lying near the dishes in the kitchen, and he stabbed her. (*Id.* at 6–8, 11–12.) He then took her television, her stereo, and additional "stuff," which he used to obtain crack-cocaine. (*Id.* at 9, 12, 16–19.)

After the State finished presenting the videotaped confession, Judge Berman, who was presiding over the proceedings, asked defense counsel whether Meachem wished to reconsider his plea of not guilty in light of the evidence adduced at the suppression hearing, particularly the videotaped confession. (Pet.App. Brief at 11.) Petitioner and his counsel discussed the matter. (ST. at 11.) In the afternoon, before the hearing was completed, defense counsel withdrew his motion to suppress the evidence, Meachem told the trial court that he was giving up his right to all pretrial hearings, including the suppression hearing that had been underway, and that he wished to plead guilty to manslaughter in the second degree and robbery in the first degree. (PT. at 5–12.)

Before the trial judge accepted Meachem's plea (*id.* at 16), he read the portions of the indictment that related to the crimes to which Meachem was pleading guilty, and asked numerous questions about the incident (*id.* at 5–10), as well as the circumstances leading to Meachem's decision to plead guilty (*id.* at 3–4). In response to the court's questions, Meachem detailed the facts giving rise to the murder and robbery, and he stated that he was in fact guilty of the crimes to which he was pleading guilty. (*Id.* at 5–12.)

The judge posed numerous questions to assess the voluntariness of the plea. In response to these questions, Meachem stated that he had had ample time to discuss the plea with his attorney (*id.* at 4); that he was pleading voluntarily and of his own free will—that no one had threatened, forced, or coerced him into pleading guilty (*id.* at 12); and, that no promises, other than the Court's promise regarding the sentence to be imposed, had been made to him (*id.* at 13).

The trial court also inquired whether, despite having previously requested and withdrawn a *pro se* request for new counsel, Meachem was satisfied with the representation rendered by his attorney. (*Id.* at 4–5). Meachem confirmed that he had no complaints about his counsel's representation.[2]

In addition, the trial court questioned Meachem to ascertain whether he understood the implications of his guilty plea. Specifically, Judge Berman inquired whether Meachem understood the crime to which he was pleading guilty and that his entering a plea was the equivalent of being found guilty by a unanimous vote of the jury. (*Id.* at 11.) The court also inquired into whether Meachem understood the constitutional rights that he was relinquishing by entering into his guilty plea—his right to pretrial hearings and a jury trial, his right to remain silent, his right to cross-examine his accusers, his right to testify at trial and call witnesses, and his right to employ any defenses relating to the use of drugs at the time of the commission of the crime. (*Id.* at 11, 14.) Meachem answered each of the questions in the affirmative. Further, the court confirmed that Meachem understood his sentencing options if he were to proceed to trial rather than plead guilty. (*Id.* at 12–13.)

The trial court also posed questions to Meachem to determine his present state of mind. (*Id.* at 14.) Meachem affirmed that he was in good physical health; that he had not recently been under the influence of

---

2. THE COURT: Now, I note that at a previous stage in this proceeding you filed a pro-se motion with me in which you asked that I relieve Mr. Grisorio as your attorney. Do you remember that?

MR. MEACHEM: Yes, sir.

THE COURT: Then when we resumed—when we commenced these hearings you informed me that you withdrew the application to have Mr. Grisorio relieved as your counsel. Is that correct?

MR. MEACHEM: Yes, sir.

THE COURT: Now, so that we don't have any issue on this question, are you satisfied with advise [sic] that has been given to you by Mr. Grisorio with regard to this plea?

MR. MEACHEM: Yes, sir.

THE COURT: Are you sure of that?

MR. MEACHEM: Yes, sir.

THE COURT: Do you have any complaints at all about the legal representation that you have had and are having from Mr. Grisorio in this case?

MR. MEACHEM: No, sir.

(PT. at 4–5.)

drugs or alcohol; and, that he understood the plea proceedings.[3] (*Id.* at 14.)

Based upon Meachem's responses, the court found that the guilty plea was knowing, intelligent, and voluntary. (*Id.* at 15.) The court accepted the plea, arraigned Meachem as a predicate violent felony offender, and set a sentencing date for January 3, 1989. (*Id.* at 15–16.)

### Petitioner's Motion to Withdraw His Guilty Plea

At the commencement of the sentencing hearing, Meachem's counsel notified the court that Meachem wished to withdraw his guilty plea. (WT. at 2.) Meachem stated that the plea was the product of coercion by defense counsel, the district attorney, and the court; that he was innocent; that he was incompetent; and, that he should have received another competency hearing prior to the court's acceptance of his plea. (*Id.* at 3–5.) In addition to requesting a psychiatric examination, Meachem requested the opportunity to file papers in support of his motion. (*Id.* at 4–5.)

The court questioned Meachem with respect to these claims. (*Id.* at 6–13.) In response to the court's inquiry, Meachem acknowledged that, at the time of his plea allocution, he understood the nature of the proceedings, that he was pleading guilty to a lesser charge, and that he was confronted with various sentencing possibilities; nonetheless, he claimed that he was under the impression that the earlier psychiatric reports indicating that he was incompetent should have been available to defense counsel

but were not (*id.* at 3, 9–11), suggesting that the older reports would have been relevant to his state of mind at the time of the plea allocution. In addition, Meachem claimed that he was "scared" and "confused" after watching the police officers testify at the suppression hearing, because they changed their story of the events leading to Meachem's arrest. (*Id.* at 11.) He also claimed that he was not only told what to say at the plea hearing, but how to answer Judge Berman's questions as well.[4] (*Id.* at 12.)

The court noted that there was nothing about Meachem's demeanor or ability to express himself that suggested that he was incompetent. (*Id.* at 7.) On the contrary, Judge Berman noted, Meachem appeared intelligent and articulate in court. (*Id.* at 8.) Nonetheless, he adjourned the sentencing hearing to allow the plea minutes to be retrieved and read, and to allow Meachem to submit *pro se* motion papers elaborating on his reasons for requesting the withdrawal. (*Id.* at 13.)

In his motion papers, Meachem reiterated that his plea was not voluntary because of duress and coercion by his attorney, and that it was not knowing and intelligent because of his prior history of mental illness. (Affidavit in Support of Motion to Withdraw Plea, ["Pet.Aff."], submitted as Resp.App. Ex. C, ¶¶ 1, 2, 8.) In addition to requesting that the court allow him to withdraw his plea and order another psychiatric evaluation, Petitioner requested new counsel, claiming that his present counsel had a "total negative outlook." (*Id.* ¶¶ 1, 3, 4, 6, 7, 10.)

---

**3.** THE COURT: Now Mr. Meachem, during the course of these hearings and the video tape, there was clear indication on your part that you were a crack user and that you were under the influence of drugs at the time this crime was committed.

   Are you waiving any defenses that you had with respect to the use of drugs at the time of the commission of this crime?
   MR. MEACHEM: Yes, sir.
   THE COURT: And as you stand here today some—more than a year and a half later, are you presently in good mind, that is to say are you of sound mind and do you understand everything that you are doing today?
   MR. MEACHEM: Yes, sir.
   THE COURT: Have you in the recent past been under the influence of any drugs?

   MR. MEACHEM: "Recent past"?
   THE COURT: Yes, within the last week or two.
   MR. MEACHEM: No, sir.
   THE COURT: Have you been under the influence of any alcoholic beverages within the last week or two?
   MR. MEACHEM: No, sir.
   THE COURT: Are you in good physical health as you stand here today?
   MR. MEACHEM: Yes, sir.
   (PT. at 14.)

**4.** Petitioner's attorney denied having advised him how to respond to the trial court's questions at the plea allocution. (WT. at 12.)

Judge Berman held an informal hearing on Petitioner's motion on January 20, 1989, after having reviewed the plea minutes and Meachem's submission. The court determined that the claims of coercion were unfounded. With respect to his claim of coercion by defense counsel based upon having been rushed into "copping out," the court noted that there had been extensive plea discussions prior to the suppression hearing, and, after the State presented its evidence, defense counsel "took an extended period of time to discuss the matter with the defendant" before he pled guilty. (ST. at 10–12.) Moreover, Judge Berman pointed to the detailed inquiry he made into whether Meachem was satisfied with counsel and the advice rendered by counsel. (*Id.* at 13–15.) He also noted the responses he received to the questions that he had posed to Meachem to ensure that the plea was voluntary. (*Id.* at 16.) In addition, Judge Berman rejected a related claim that Meachem raised for the first time during the hearing—that he was coerced into changing his plea since the court allegedly refused his request for additional time in order to pray to Allah—based on the fact that the record did not reflect, nor did he recall, such a request. (*Id.* at 9.)

With respect to whether Meachem knowingly entered into his plea, the court noted that, at the plea allocution, it had extensively questioned Petitioner about the crime, his state of mind, and his understanding of court proceedings. (*Id.* at 15, 17–18.) Meachem's affirmative responses, combined with the fact that, during court proceedings he appeared articulate, intelligent, and knowledgeable with respect to the law (*id.* at 12–13), had supported the trial court's conclusion that the plea was knowing and intelligent (*id.* at 18). Upon review of the plea allocution record, Judge Berman concluded, "I was satisfied then that he had entered the plea voluntarily, intelligently and knowingly, and despite his cha[r]ge to the contrary . . . I still am satisfied that he has knowingly, intelligently and voluntarily entered into this plea." (*Id.*)

Based upon the above conclusion, the court denied Petitioner's motion to withdraw the plea (*id.* at 18), and his request for another psychiatric evaluation (*id.* at 13). Meachem was then sentenced as a predicate felony offender. (*Id.* at 22–23.)

## DISCUSSION

### I. *Exhaustion*

Respondent does not contest that Petitioner's claim challenging the constitutionality of his guilty plea has been presented to New York State's highest court and is therefore exhausted. However, Respondent argues that Petitioner's sentencing claim is not entitled to federal habeas review, since it is not exhausted. (Remer–Smith Aff. ¶ 9.)

An application for a writ of habeas corpus may not be heard unless all available state court remedies have been exhausted. 28 U.S.C. § 2254(b); *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 512–13, 30 L.Ed.2d 438 (1971); *Ellman v. R.E. Davis,* 42 F.3d 144, 147 (2d Cir.1994). Where state law affords a petitioner the right to raise a constitutional claim "by any available procedure," and the claim is not raised, it cannot be exhausted. *Id.* See also 28 U.S.C. § 2254(c).

■ "[I]t is not sufficient merely that the [petitioner] . . . has been through the state courts." *Picard,* 404 U.S. at 275–76, 92 S.Ct. at 512. Rather, the federal claims must be "fairly presented" to the state courts so that the state has an opportunity to correct any alleged constitutional violations. *Id.,* 404 U.S. at 276, 92 S.Ct. at 512–13; *Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380, *reh'g denied,* 490 U.S. 1076, 109 S.Ct. 2091, 104 L.Ed.2d 654 (1989); *McGann v. New York,* 870 F.2d 908, 910 (2d Cir.1989); *Daye v. Attorney Gen. of New York,* 696 F.2d 186, 191–92 (2d Cir.1982) (en banc), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984); *Alvarez v. Scully,* No. 91 Civ. 6651 (PKL), 1993 WL 15455, *3 (S.D.N.Y. January 11, 1993), *aff'd without opinion,* 23 F.3d 397 (2d Cir.1994). *See also Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995) ("[t]o fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent

state.' ") (quoting *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990) (per curiam)).

■ In the present action, Petitioner asserted only a single claim—that the trial court erred in denying his motion to withdraw his guilty plea—when he sought leave to appeal to the Court of Appeals. *See* Leave Letter, Resp.App. Ex. H. Because the sentencing claim that Petitioner raised on direct appeal to the Appellate Division was not appealed to the State's highest court, this claim has not been exhausted. *See Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) ("The fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three claims and a letter to the Court of Appeals arguing only one of them, was that the other two had been abandoned.").

■ In short, Petitioner has only exhausted one of his two claims for habeas relief. He has therefore presented this Court with a mixed habeas petition, containing both exhausted and unexhausted claims. *See Rose v. Lundy,* 455 U.S. 509, 520, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982); *Gatto v. Hoke,* 809 F.Supp. 1030, 1035 (E.D.N.Y.), *aff'd without opinion,* 986 F.2d 500 (2d Cir.1992). Although the court must dismiss a mixed petition so as to allow the petitioner to exhaust his unexhausted claim or to file another petition without it, *Rose,* 455 U.S. at 510, 102 S.Ct. at 1199; *Bossett,* 41 F.3d at 828; *Grey,* 933 F.2d at 120, if the petitioner no longer has "remedies available" in the state courts because he is procedurally barred by state law from raising the unexhausted claim, the court may deem that claim exhausted. *Engle v. Isaac,* 456 U.S. 107, 125–26 n. 28, 102 S.Ct. 1558, 1570–71 n. 28, 71 L.Ed.2d 783, *reh'g denied,* 456 U.S. 1001, 102 S.Ct. 2286, 73 L.Ed.2d 1296 (1982); *Bossett,* 41 F.3d at 828; *Grey,* 933 F.2d at 120–21 (citing *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 1043 n. 9, 103 L.Ed.2d 308 (1989)); *Holmes v. Bartlett,* 810 F.Supp. 550, 554 (S.D.N.Y.1993).

■ Here, Petitioner is procedurally barred from raising his unexhausted sentencing claim in the New York State courts, since a person is entitled to only one request for leave to appeal to the New York State Court of Appeals and Petitioner has already availed himself of that opportunity. *See* N.Y.Court Rules § 500.10(a); *Bossett,* 41 F.3d at 829; *Grey,* 933 F.2d at 120; *Holmes,* 810 F.Supp. at 554–555. Collateral review of this claim in the New York State courts is also precluded since it could have been raised on direct appeal and determined on the basis of the existing record, but it was not. *See* N.Y.Criminal Procedure Law § 440.10(2)(c); *People v. Cooks,* 67 N.Y.2d 100, 101, 500 N.Y.S.2d 503, 491 N.E.2d 676 (1986).

Because New York courts would find Petitioner's unexhausted claim barred from review, it would be fruitless to require Petitioner to return to state court to exhaust it. *Bossett,* 41 F.3d at 829; *Grey,* 933 F.2d at 120; *Holmes,* 810 F.Supp. at 555. The claim is therefore procedurally defaulted. *See Ellman,* 42 F.3d at 147; *Bossett,* 41 F.3d at 829; *Washington v. James,* 996 F.2d 1442, 1446–47 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994).

■ Petitioner may only receive federal habeas review for his procedurally defaulted sentencing claim if he can establish "cause and prejudice" for the default, *see Teague v. Lane,* 489 U.S. 288, 297–99, 109 S.Ct. 1060, 1067–69, 103 L.Ed.2d 334, *reh'g denied,* 490 U.S. 1031, 109 S.Ct. 1771, 104 L.Ed.2d 206 (1989), or that failure to consider his claim will result in a "fundamental miscarriage of justice." *Murray v. Carrier,* 477 U.S. 478, 495, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *see also Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

■ In the present case, Petitioner cannot establish cause for failing to raise the sentencing claim in his application for leave to appeal to the Court of Appeals. The factual and legal bases for this claim were "reasonably available" to his appellate counsel, since it involved the sentencing proceeding and therefore was part of the record on appeal. *See Murray,* 477 U.S. at 488, 106 S.Ct. at 2645. In fact, the Appellate Division considered and rejected this claim when Petitioner appealed his conviction to that court. Nor has Petitioner alleged any interference by

state officials making compliance with state procedural rules impracticable, or claimed ineffective assistance of appellate counsel, to demonstrate cause. *See Murray,* 477 U.S. at 488, 106 S.Ct. at 2645. "As Petitioner has failed to establish 'cause', in other words why he did not raise these claims at the appropriate time and in the appropriate forum, it is unnecessary to make an inquiry into the question of prejudice." *Bentley v. Scully,* 851 F.Supp. 586, 604 (S.D.N.Y.), *vacated on other grounds,* 41 F.3d 818 (2d Cir.1994).

■ Finally, Petitioner's procedural default may not be excused because there has been a "fundamental miscarriage of justice." A miscarriage of justice occurs "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496, 106 S.Ct. at 2649; *Washington,* 996 F.2d at 1447. Petitioner's sentencing claim has no bearing on his guilt or innocence, nor is there anything in the record to suggest that Petitioner is innocent. The miscarriage of justice standard therefore has not been met.

■ In sum, since Petitioner has not established cause and prejudice for his procedural default, or that a fundamental miscarriage of justice would result from this Court's failure to review the defaulted claim, so as to excuse the procedural default, the Court is precluded from addressing the merits of Petitioner's sentencing claim.[5] However, since Petitioner exhausted his state court remedies with respect to the constitutional challenge to his guilty plea, this claim will be addressed on the merits.

## II. *Petitioner's Guilty Plea*

Petitioner claims that the trial court erred in denying his motion to withdraw his guilty plea, since it was the product of "coercion and confusion." (Pet. at 5.) It is my view, consistent with that of the unanimous opinion of the Appellate Division, which rejected Petitioner's argument on direct appeal, that this claim is without merit.

■ It is well settled that the Due Process Clause of the Constitution requires an affirmative showing that an accused's plea of guilty is entered knowingly and voluntarily before the trial court may accept the plea. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). *See also Godinez v. Moran,* —— U.S. ——, ——, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993); *Parke v. Raley,* 506 U.S. 20, ——, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992), *reh'g denied,* —— U.S. ——, 113 S.Ct. 1068, 122 L.Ed.2d 372 (1993); *Willbright v. Smith,* 745 F.2d 779, 780 (2d Cir.1984). In order to ensure that a defendant's guilty plea represents " 'a voluntary and intelligent choice among the alternative courses of action open to the defendant,' " *Parke,* 506 U.S. at ——, 113 S.Ct. at 523 (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970)), the trial court judge must make a searching inquiry into the circumstances surrounding the plea. *See Boykin,* 395 U.S. at 243–44, 89 S.Ct. at 1712 ("what is at stake ... demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence.").

■ On habeas review, the question of whether a guilty plea—which results in a defendant's conviction as well as a waiver of constitutional rights—has been entered voluntarily within the meaning of the Constitution, "is a complex one that involves questions of law and questions of fact." *Matusiak v. Kelly,* 786 F.2d 536, 543 (2d Cir.), *cert. dismissed,* 479 U.S. 805, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986); *see also Ventura v. Meachum,* 957 F.2d 1048, 1055 (2d Cir.1992); *Oppel v. Meachum,* 851 F.2d 34, 37 (2d Cir.), *cert. denied,* 488 U.S. 911, 109 S.Ct. 266, 102 L.Ed.2d 254 (1988). As such, " 'the govern-

---

5. The Court notes that, even if Petitioner's sentencing claim were exhausted, it is not cognizable on habeas review because it does not present a constitutional question. It is well settled that a federal habeas court will not review a sentence that is imposed within the limits of the state statutory sentencing guidelines, as was the case

herein. *Dorszynski v. United States,* 418 U.S. 424, 431–32, 94 S.Ct. 3042, 3047, 41 L.Ed.2d 855 (1974); *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992); *Underwood v. Kelly,* 692 F.Supp. 146, 152 (E.D.N.Y.1988), *aff'd mem.,* 875 F.2d 857 (2d Cir.1989). *See also* N.Y.Penal Law § 70.02.

ing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law' ... [but] questions of historical fact, including inferences properly drawn from such facts, are in this context entitled to the presumption of correctness accorded state court factual findings under 28 U.S.C. § 2254(d)." [6] *Parke,* 506 U.S. at ——, 113 S.Ct. at 526 (quoting *Marshall v. Lonberger,* 459 U.S. 422, 431–32, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1983)).

▆▆▆ Questions as to a defendant's competence to enter into a guilty plea are among those historical facts entitled to deference by a federal court on habeas review. *See Demosthenes v. Baal,* 495 U.S. 731, 735–36, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990) (state court's conclusion as to competency entitled to presumption of correctness); *Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794, *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 29, 77 L.Ed.2d 1451 (1983) (same); *Marshall,* 459 U.S. at 435, 103 S.Ct. at 851 (federal habeas court bound to respect trial court's finding that defendant was intelligent); *Matusiak,* 786 F.2d at 543 (finding of trial court that petitioner had knowledge of charges and was competent to stand trial are questions of fact, subject to requirements of § 2254(d)). Where the record fairly supports a state court's factual findings, and they are therefore presumed to be correct, a petitioner must establish by "convincing evidence" that the State court's findings were erroneous. *Senna v. Patrissi,* 5 F.3d 18, 20 (2d Cir. 1993); *Ventura,* 957 F.2d at 1054, 1056.

▆▆▆ In the present action, there is ample support in the record for the trial court's finding at the hearing on Petitioner's motion that, based upon Petitioner's plea allocution, his motion papers, and the evidence and prior proceedings, the plea was knowing and voluntary. At the outset of the plea allocution, Judge Berman advised Petitioner to consult with defense counsel during plea proceedings if he did not understand any questions, which Petitioner did at least once during the allocution. Judge Berman read the portions of the indictment related to the charged crimes and asked detailed questions regarding the circumstances of the incident and Petitioner's decision to plead guilty. Petitioner recounted the facts giving rise to the crime, and presented an account that was consistent with the evidence presented at the suppression hearing. Petitioner acknowledged that he was guilty of the crimes to which he was pleading guilty.

Petitioner specifically affirmed at the plea allocution that he was pleading voluntarily, without threats or coercion by anyone. In addition, Meachem stated that he understood each of the constitutional rights that he was relinquishing, that he was in good physical health, and that he understood the nature of the plea proceedings. After this detailed inquiry the trial court accepted his plea. Based upon the above facts, there is ample support in the record for the trial court's determination that Petitioner's plea was knowing, voluntary and intelligent. *See, e.g., Isaraphanich v. United States,* 632 F.Supp. 1531, 1533 (S.D.N.Y.1986) (where petitioner recounted the facts of the crime to which he was pleading guilty, was informed of the rights he was waiving by pleading guilty, and denied that he was pressured into changing his plea, habeas court held that plea was voluntary and knowing).

---

6. 28 U.S.C. § 2254(d) states in relevant part, that "a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State ... were parties ... shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit ... that such factual determination is not fairly supported by the record...." *See also Maggio v. Fulford,* 462 U.S. 111, 117, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983); *Sumner v. Mata,* 449 U.S. 539, 543–45, 549, 101 S.Ct. 764, 767–68, 770, 66 L.Ed.2d 722 (1981). Although Petitioner also claims that he was improperly denied a formal hearing on the plea withdrawal motion, the § 2254(d) requirements of a full and fair state court hearing have been satisfied, so as to mandate a deferential standard of review for factual findings in these proceedings: both Petitioner, his counsel, and the State were present at the hearing on Petitioner's motion; Petitioner was given an opportunity to be heard at the time he made the motion, at the informal hearing, and through motion papers; and, the claim received plenary consideration. *See Sumner v. Mata,* 449 U.S. 539, 545–46, 101 S.Ct. 764, 768, 66 L.Ed.2d 722 (1981).

Nonetheless, Petitioner claims that defense counsel coerced him into pleading guilty. The record fully supports the trial court's conclusion that Petitioner was not subject to any such coercion. Petitioner had initially entered a plea of innocent and resisted earlier attempts at a plea agreement. It was only after hearing the evidence at the suppression hearing and the court asked whether he was open to reconsidering his plea, that he changed his mind. Judge Berman asked numerous questions at the plea allocution to determine whether Petitioner was satisfied with his counsel's advice and representation. Petitioner answered these questions in the affirmative. Judge Berman subsequently noted that he had asked such questions because Petitioner had previously interposed and then withdrawn a motion for new counsel. In light of Petitioner's affirmative responses, and in the absence of evidence to the contrary, the state court's finding is entitled to deference.[7] *See Ventura*, 957 F.2d at 1056 (state court's finding that petitioner's plea was not involuntary, where petitioner claimed attorney's letter and alleged "closed-door deal" induced him to lie, was granted deference by federal habeas court, since petitioner answered court's questions affirmatively during a thorough plea allocution).

Further, even if defense counsel had advised Petitioner to change his plea based upon the State's evidence of his guilt, strong advice under such circumstances does not constitute coercion. *See, e.g., Lunz v. Henderson*, 533 F.2d 1322, 1327 (2d Cir.) (advice based on the strength of State's case and the weakness of the defense is not coercive), *cert. denied*, 429 U.S. 849, 97 S.Ct. 136, 50 L.Ed.2d 122, *reh'g. denied*, 429 U.S. 988, 97 S.Ct. 512, 50 L.Ed.2d 601 (1976); *Mead v. Walker*, 839 F.Supp. 1030, 1034 (S.D.N.Y. 1993) (habeas petitioner was not coerced by trial counsel into accepting plea, where record indicated that prosecution's case was strong and the likelihood of conviction was high); *Gunn v. Kuhlman*, 479 F.Supp. 338, 343 (S.D.N.Y.1979) ("[t]he fact that counsel, upon a realistic appraisal of the situation, may have strongly impressed his view upon the petitioner is not in itself improper, in the absence of any showing that [petitioner's] will was overborne.").

With respect to Petitioner's claim of coercion by the trial court in pressing him for a decision, there is no suggestion in the record of any request by Petitioner for an extension of time to consider the State's plea offer—for religious, or any other, reasons. Indeed, at the hearing on Petitioner's motion, Judge Berman explicitly found that no such request had been presented to the trial court. In addition, as Judge Berman noted, Petitioner had ample time to consider changing his plea, both before and after the State presented evidence at the suppression hearing. The record supports the trial judge's conclusion, since it indicates that Petitioner had been aware of his plea options, and there had been some plea discussions, long before the suppression hearing had commenced. *See* Psychiatric Evaluation dated March 4, 1988, Resp.App. Ex. B. In sum, the record provides no support for Petitioner's bare allegations that the trial court had placed him under undue time constraints to decide whether to plea guilty. Accordingly, he has failed to meet his burden of showing convincing evidence of coercion by the court. *See Senna*, 5 F.3d at 20; *Ventura*, 957 F.2d at 1056.

In her brief on direct appeal, Petitioner's counsel also argued that Petitioner was especially vulnerable to coercion, due to the combination of his prior mental illness and drug addiction, and the stress of having been accused of murdering his sister. Emotional turmoil from being accused of a crime does not give rise to a finding of coercion.[8]

---

7. To the extent that Petitioner claims coercion due to counsel's general inadequacies, no claim of ineffective assistance of counsel was raised on appeal or in this proceeding, and such a claim would be inconsistent with Petitioner's unequivocal responses at his plea allocution indicating that he was satisfied with counsel's representation.

8. In a related argument, Petitioner claimed at his motion to withdraw, that the testimony of the police officers caused him to plead guilty; this fact does not alter the conclusion that Petitioner's plea was not coerced, since fear of a more severe punishment in the face of strong evidence by the prosecution does not invalidate a guilty plea. *See Mead*, 839 F.Supp. at 1034; *Bordenkircher v. Hayes*, 434 U.S. 357, 363–64, 98 S.Ct.

*See, e.g., Fluitt v. Superintendent, Green Haven Correctional Facility,* 480 F.Supp. 81, 86 (S.D.N.Y.1979) (" 'Distress' and 'nervousness' are the characteristics of most persons facing immediate trial under a criminal prosecution. To accept such a normal emotional reaction as a ground to vitiate a plea entered only after extensive questioning of a defendant to assure its constitutional validity, would make a shambles of the guilty plea procedure.").

In addition, Petitioner asserts that he was "confused" during the plea allocution due to his prior mental illness, and therefore, the plea was unknowing.[9] The trial court confirmed six months prior to the plea allocution, upon defense counsel's motion, that Petitioner was competent to proceed. Neither the trial judge nor defense counsel subsequently saw any reason to request re-examination of Petitioner. When Petitioner sought a competency examination in conjunction with his motion to withdraw the plea, the court determined that one was not warranted. Rather, the court found that there was nothing about Meachem's demeanor or ability to express himself to suggest that he was incompetent. On the contrary, the trial judge determined that Petitioner appeared intelligent and articulate in court, which finding is entitled to deference on habeas review. *See, e.g., Marshall,* 459 U.S. at 434, 103 S.Ct. at 851 ("Title 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").

Indeed, Petitioner's own responses during the plea proceedings refute any notion that he was confused either about the charges or the conditions of the plea. Moreover, when he made the motion to withdraw his plea, Petitioner conceded that he had understood the proceedings, his sentencing options, and that he was pleading guilty to a lesser charge. Under these circumstances, there is no basis for Petitioner's claim that his plea was unknowing due to his alleged impaired mental state at the time.[10] *See, e.g., Demosthenes,* 495 U.S. at 735–36, 110 S.Ct. at 2225 (habeas relief based on claim that petitioner was not competent to enter into guilty plea denied, where psychiatrists had found petitioner fit to proceed, and trial court had concluded that petitioner was competent after observing him in court and questioning him on the record); *Maggio,* 462 U.S. at 117–18, 103 S.Ct. at 2264 (trial court's finding that habeas petitioner was competent to stand trial was fairly supported by the record, where judge observed his conduct and defense counsel had failed to seek psychiatric examination until late into proceedings); *Mead v. Walker,* 839 F.Supp. 1030, 1033–34 (S.D.N.Y.1993) (where psychiatric reports showed that habeas petitioner had been fit to proceed in his own defense, and the plea allocution record revealed that petitioner was able to comprehend proceedings and was articulate, habeas court affirmed trial court's finding that petitioner's plea was knowing).

■ Petitioner's appellate counsel also pointed to purported deficiencies in the factual allocution in support of the claim that the plea was unknowing. Specifically, counsel claimed that Petitioner had not admitted the *mens rea* of recklessness for the manslaughter charge, and that Petitioner did not admit

663, 668, 54 L.Ed.2d 604 (1977), *reh'g denied,* 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978).

9. The Court notes that this aspect of Petitioner's claim was not presented to the New York State Court of Appeals. *See* Leave Letter, Resp. App.Ex. H. In any event, as discussed in the text, it is without merit.

10. The related arguments that Petitioner's appellate counsel made to the Appellate Division (but did not appeal to the Court of Appeals), regarding whether Petitioner's plea was knowing, have not been raised by Petitioner in these proceedings. In any event, they are also without merit. Notwithstanding the claim that Petitioner did not fully comprehend the rights he was waiving, the record shows that Judge Berman specifically inquired whether Petitioner understood that he was waiving his constitutional rights, including the right to the suppression hearing; Petitioner answered each question in the affirmative. Contrary to Petitioner's appellate counsel's claim that the plea was not intelligent because it was a "bad bargain," the record demonstrates that the State presented overwhelming evidence of Petitioner's guilt and, therefore, the resulting sentence, which was far less severe than that which likely would have been imposed had Petitioner proceeded to trial, does not appear to have been a "bad bargain" in any respect.

to any connection between threatening the victim with a knife and robbing her of her property. (Pet.App. Brief at 16–17.) To the contrary, the record reveals that the court read the indictment to Petitioner and Petitioner acknowledged that he was guilty of the charged crimes. Petitioner's guilt as to each element of the crimes to which he pled was also conceded by his description of his actions on the night of the incident.[11] It was apparent from Petitioner's admissions, therefore, that his conduct satisfied each element of the crimes, and that he was not confused. *Cf. Panuccio v. Kelly,* 927 F.2d 106, 110–11 (2d Cir.1991) (although habeas petitioner had not expressly admitted an element of the crime to which he pled guilty, plea was upheld because he clearly understood the charges against him); *Willbright,* 745 F.2d at 780–81 (factual basis inquiry unnecessary to assure that plea comported with due process where circumstances indicated that such an inquiry was not necessary, since plea was in open court, petitioner denied he was coerced, judge had knowledge of underlying facts from other proceedings, and trial counsel was not incompetent).

■ Moreover, this Court can presume that Petitioner's trial counsel made him aware of the elements of the crimes to which he pled guilty. *See, e.g., Marshall,* 459 U.S. at 436, 103 S.Ct. at 852 ("respondent must be presumed to have been informed, either by his lawyers or at one of the presentencing proceedings, of the charges on which he was indicted"); *Oppel,* 851 F.2d at 38 (habeas petitioner's claim that plea was unknowing because trial court failed to inform him that intent was required element of murder was without merit, since "it is normally presumed that the defendant is informed by his attorney of the charges against him and the elements of those charges").

■ Since Petitioner's plea was knowing, voluntary, and intelligent, the trial court did not err in denying his motion to withdraw the plea. *See Gonzalez v. Green Haven Correctional Facility,* No. 85 Civ. 3775 (CSH), 1986 WL 1194, \*\*4–5 (S.D.N.Y. January 17, 1986) (trial court did not erroneously deny petitioner's motion to withdraw his guilty plea where there was no indication in the record of plea proceedings that petitioner did not understand the court's questions, and petitioner did not present objective evidence of confusion); *Gunn,* 479 F.Supp. at 343–44 (where the plea was not constitutionally defective, and the trial court made necessary inquiries into factual bases for the plea, the trial court properly rejected petitioner's motion to withdraw the plea, and as such, habeas relief was not warranted).[12] Therefore, Petitioner is not entitled to the habeas relief that he seeks.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the petition for a writ of habeas corpus be denied and that the action be dismissed. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten days from service of this report to file written objections. *See also* Fed. R.Civ.P. 6(a) and 6(e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Sidney H. Stein, United States

---

11. In particular, Petitioner affirmed his reckless conduct by conceding that, as a result of an argument with his sister, he picked up a knife and swung it at her, striking her in the neck area. (PT. at 6–7.) Petitioner conceded the connection between threatening his sister with a knife and the robbery by acknowledging that, when he was in his sister's apartment, he threatened her with a knife and stole her property. (PT. at 9–10.)

12. Nor is there any merit to Petitioner's claim on appeal that the trial court should have conducted a formal evidentiary hearing to determine the validity of his plea. " 'The nature and extent of the fact-finding procedures [pre]requisite to the disposition of such motions [to withdraw a guilty plea] rest largely in the discretion of the Judge to whom the motion is made.' " *Fluitt,* 480 F.Supp. at 85 (quoting *People v. Tinsley,* 35 N.Y.2d 926, 927, 365 N.Y.S.2d 161, 162, 324 N.E.2d 544, 544 (1974)). In light of the circumstances giving rise to Petitioner's motion to withdraw his plea, the trial court's decision not to entertain a formal evidentiary hearing was reasonable. *See, e.g., Mead,* 839 F.Supp. at 1034–35 (no formal hearing was required where nothing changed between the time of the allocution and sentencing; the trial court had made a detailed inquiry into the basis for the plea; and, the trial court had heard and rejected petitioner's reasons for requesting that the plea be withdrawn).

District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Stein. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989).

Dated: New York, New York

July 20, 1995